# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE SYSTEMS, INC. on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ROBERT ASARO-ANGELO, in his official capacity as THE COMMISSIONER OF THE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT OF THE STATE OF NEW JERSEY,<br><br>        Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Eagle Systems, Inc. ("Eagle"), on behalf of itself and all others similarly situated, by way of Complaint against defendant Robert Asaro-Angelo, in his official capacity as the Commissioner of the Department of Labor and Workforce Development of the State of New Jersey ("NJDOL"), alleges and states as follows:

## INTRODUCTION

1.    This is a class action seeking injunctive and declaratory relief.

2.    Eagle brings this suit to stay the matter of *Eagle Intermodal, Inc. v. NJ Department of Labor*, pending before the Office of the Administrative Law and identified as Docket Nos.: LID 04801-2012, 02720-2017; Agency Ref Nos. 12-002, 17-003 (the "OAL Matter"), because that case is an egregiously *ultra vires* action precipitated by unlawful tax assessments made by the NJDOL against Eagle.

3.    Eagle also brings suit to declare void the unlawful assessments issued by the NJDOL against Eagle, for the reasons set forth herein.

4. This suit is also brought to enjoin the NJDOL from unlawfully and impermissibly assessing further unemployment taxes against Eagle or other motor carriers within the putative class based upon these carriers' association with owner-operator independent contractors (the "Class Members"), while this action is pending.

5. This suit is also brought to permanently enjoin and declare void the enforcement of N.J.S.A. § 43:21-19(i)(6) against Eagle and the Class Members as such enforcement violates the Federal Aviation Administration Authorization Act of 1994 ("FAAAA").

6. Using independent truck drivers (also known as "Owner-Operators") to transport freight has been an essential hallmark of the trucking industry's business model in New Jersey for almost a century.

7. The accepted and common practice is to treat these Owner-Operators as independent contractors because they, among other things, own their trucks, lease their trucks to motor carriers under Federal Motor Carrier Safety Administration ("FMCSA") regulations, determine to whom to offer their services, determine when and how often to work, and control how they provide hauling services.

8. In addition, Owner-Operators run their own independent businesses and are responsible for their own costs, expenses, and opportunities for profit and loss. As a result, being an Owner-Operator is an entry point into the trucking industry, evidenced by the fact that some of the largest trucking operations in the country started with only one Owner-Operator and one truck.

9. Despite these unassailable facts, the NJDOL unilaterally abandoned its enforcement position regarding Owner-Operators and motor carriers—circumventing the NJDOL's own regulations and established law in the process—to summarily find Owner-Operators were "employees."

10.    The NJDOL's improper practices resulted in unwarranted, lawless assessments against medium and small sized motor carriers, causing those motor carriers to close their New Jersey operations, file for bankruptcy, or abandon their business model due to the prohibitive cost in challenging such groundless assessments.

11.    Regarding Eagle specifically, the NJDOL assessed Eagle over $2 million dollars in alleged unemployment contributions, penalties, and interest, crippling Eagle's operations and potentially forcing it to also close its operations in New Jersey.

12.    The NJDOL's new (albeit unfounded) position is egregious, conscience-shocking behavior which deprives Eagle and the Class Members of their substantive due process rights by engaging in *ultra vires* rulemaking, in stark contrast to its past regular, consistent, and predictable enforcement of New Jersey's statutory and regulatory scheme which views Owner-Operators as independent contractors under both state and federal law.  The NJDOL's refusal to follow its *own* regulations has the deleterious effect of disrupting an entire model of doing business in effect for over eighty years.

13.    Trial of the OAL Matter began with opening arguments on May 23, 2018 and subsequent trial dates are scheduled for July 10, August 8, and August 15, with additional trial dates to be scheduled.

14.    This trial must be stayed because it is procedurally and substantively unconstitutional: the OAL Matter (i) is based upon lawless tax assessments imposed on Eagle after the NJDOL refused to follow its own promulgated rules; and (ii) involves the application of N.J.S.A. § 43:21-19(i)(6), which is preempted under the FAAAA.

15.    For those reasons, and the reasons set forth in greater detail below, this Court's immediate intervention is required to stay the OAL Matter and enjoin the NJDOL from

3

continuing its practice of issuing additional unlawful assessments upon Eagle and other motor carriers, until this Court resolves the important and far-reaching legal issues set forth herein.

## THE PARTIES, JURISDICTION, AND VENUE

15.    Eagle Sytesms, Inc., is a Washington corporation with its principal place of business at 230 Grant Road, Suite A1, East Wentachee, Washington 98802.

16.    Defendant Robert Asaro-Angelo is sued in his official capacity as the Commissioner of the Department of Labor and Workforce Development of the State of New Jersey.  N.J.S.A. § 34:1-6 and N.J.S.A. § 34:1A-6 authorizes the Commissioner to enforce, among other statutes, N.J.S.A. § 43:21-19(i)(6) and N.J.S.A. § 43:21-19(i)(7)(X), which apply to this matter.

17.    This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2201 because this case contains federal questions arising under the U.S. Constitution including the Supremacy Clause, the Due Process Clause of the Fourteenth Amendment, the Federal Aviation Administration Authorization Act, 15 U.S.C. § 14501(c)(1), and this proceeding is one for declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202.

18.    This Court has supplemental jurisdiction over Eagle's state law claims under 28 U.S.C. § 1367.

19.    This Court has personal jurisdiction over the Commissioner because he performs his official duties in New Jersey.

20.    Venue is proper in this District because a substantial number of events giving rise to the Complaint occurred in this district.

## FACTUAL BACKGROUND AS TO ALL COUNTS

**A.      New Jersey's Unemployment Compensation Law**

21.    Under the New Jersey Unemployment Compensation Law ("NJUCL"), businesses in this state must contribute to the State Unemployment Compensation Fund based upon the taxable wages paid to "employees."

22.     Under the NJUCL, the ABC Test, codified at N.J.S.A. § 43:21-19(i)(6), is generally the default standard in determining whether a worker is an independent contractor or an employee.

23.    Pursuant to the ABC Test, the purported employer has the burden of proof to demonstrate that the individual worker: (A) has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; (B) performs such service either outside the usual course of business for which such service is performed or that such service is performed outside of all of the places of business of the enterprise for which such service is performed and (C) is customarily engaged in an independently established trade, occupation, profession or business.

24.    If the alleged employer fails to establish, to the NJDOL's satisfaction, *any* prong of the ABC Test, then the individual is deemed to be an employee.

25.    However, the NJUCL specifically provides certain categories of services are not subject to the ABC test, and are instead entirely exempt from state unemployment compensation coverage if those delineated services are also deemed exempt under the Federal Unemployment Tax Act ("FUTA").

26.    The reason for these specialized exemptions is clear and has been elucidated upon in prior decisions.  Namely, it is understood that the common law test applied at the federal

level is more liberal than that imposed by the ABC Test, in deference to the statutorily recognized distinctions in employment relationships in certain trades.

27. These specialized exemptions cover approximately twenty-six (26) different industries, and are codified at N.J.S.A. § 43:21-19(i)(7).

28. One of the specialized exemptions governs Owner-Operators (the "Owner-Operator Exemption") and provides that specified services performed by operators of motor vehicles are exempt from NJUCL coverage provided that they are also exempt under FUTA. N.J.S.A. § 43:21-19(i)(7)(X).

29. Evidence used in determining whether services are exempt under FUTA may include, "among other things," an IRS private ruling letter, IRS tax audit, IRS determination letter, or documentation of responses to the IRS 20-factor test for independent contractor status. N.J.A.C. § 12:16-23.2(a)(1)-(4) ("Documentation of responses to the 20 tests required by the Internal Revenue Service to meet its criteria for independence.").

30. N.J.A.C. § 12:16-23.2(a)(4) therefore provides companies such as Eagle and the Class Members with the unfettered right to rely on the IRS 20-factor test to prove Owner-Operators who affiliate with them are, in fact, independent contractors, and therefore establish exemption from any unemployment contributions under the NJUCL.

**B.    Eagle and the Class Members Utilize Independent Contractor Owner-Operators in Compliance with Federal Law.**

31. Eagle provides fully integrated intermodal solutions throughout the country, including intermodal terminal management and maintenance, container yard management, and various trucking services including drayage service.

32. Eagle and the Class Members are considered "motor carriers" as defined by the FMCSA, and are mandated by federal law to comply with all applicable provisions of the FMCSA regulations.

6

33.    To meet customer needs, Eagle and the Class Members also lease equipment from, and utilize the services of, independent Owner-Operators to transport freight over roads and highways.

34.    These Owner-Operators are classic independent contractors.  Among other things, these Owner-Operators own their trucks and have investment in their own equipment, are paid on a "per trip" or "per load" basis, do not have set work schedules, do not have set routes, decide whether or not to accept jobs, pay their own business expenses, can hire their own assistants or additional drivers, and can perform services for others besides Eagle.

35.    Owner-Operators who associate with Eagle and the Class Members sign lease agreements whereby Eagle leases the Owner-Operators' vehicles, and the Owner-Operator provides driving services either personally or through other supplied qualified drivers.  These lease agreements are mandated by, and must comport with, the requirements of Part 376 of the FMCSA regulations governing the "Lease and interchange of vehicles."

36.    Federal law mandates these lease agreements contain provisions concerning compensation, insurance obligations, operating expenses, and escrow accounts, among many other provisions.

37.    In addition, the lease agreement must contain certain specific language, mandated by federal law, that the motor carrier

> shall have exclusive possession, control, and use of the equipment for the duration of the lease.  The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. 376.12(c)(1).

38.    The regulations further provide that "nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by

the lessor is an independent contractor or an employee of the authorized carrier." 49 C.F.R. 376.12(c)(4).

39.    When using independent contractor Owner-Operators, motor carriers such as Eagle and the Class Members are federally mandated to comply with additional FMCSA regulations, which include mandating certain insurance coverage requirements regarding the leased vehicle; requiring Owner-Operators to keep driver logs to demonstrate compliance with FMCSA maximum driving time requirements; marking the Owner-Operators' vehicle with appropriate signs displaying motor carrier names and identification numbers; conducting driver drug and alcohol testing; and providing requisite training, particularly regarding hazardous materials.

###    C.    The State Audits Eagle and Imposes Lawless Tax Assessments.

40.    The NJDOL treated Owner-Operators who contract with companies like Eagle and other Class Members as independent contractors for decades.

41.    In 2008 through 2009, the NJDOL radically changed its enforcement policy by summarily holding Owner-Operators to be employees.

42.    Regarding Eagle, in May 2010, a former Owner-Operator for Eagle, Orlando Ortega ("Ortega") applied for unemployment benefits.

43.    Ortega's claim for unemployment benefits was denied after hearing. Upon appeal, the Appeal Tribunal affirmed the denial of unemployment benefits to Ortega.

44.    In its decision, the Appeal Tribunal noted Ortega "supplied his own truck," "chose what days to work," "chose what hours to work," "chose what loads to accept or reject from the employer", "decided how to perform the work accepted," and "was responsible for all of his own business expenses." Consequently, the Appeal Tribunal found that Ortega was an independent contractor.

45.    Despite this clear ruling, the NJDOL notified Eagle it would audit Eagle's operations.

46.    Eagle cooperated with the investigation, providing all documents and information requested by the NJDOL's auditor, George Matthew ("Matthew").

47.    Eagle also enlisted the assistance of William Burns ("Burns"), a private tax and business consultant who spent more than 32 years with the NJDOL serving in various capacities, including Assistant Director and Executive in charge of Field Audits and Investigations.

48.    Burns, who supervised Matthew when they were both employed at the NJDOL, advised Matthew he needed to conduct the 20-factor test under FUTA to determine whether Eagle's Owner-Operators were independent contractors or employees.  Matthew refused.

49.    On multiple occasions, Burns and Eagle's President and Chief Executive Officer, Dave Hensal ("Hensal"), implored Matthew to conduct the 20-factor test, even citing to the regulation, N.J.S.A. § 43:21-19(i)(7)(X).  Matthew continued to refuse.

50.    Instead, Matthew summarily concluded that virtually all Owner-Operators which contracted with Eagle for the period of 2006-2009 were employees and not independent contractors.  Remarkably, this included Ortega—despite the New Jersey unemployment Appeal Tribunal's prior determination he was an independent contractor.

51.    Then on September 27, 2011, the NJDOL issued a Notice of Determination alleging Eagle owed more than $900,000 in back contributions, interest, and penalties.

52.    In February 2012, the NJDOL issued a revised notice to Eagle indicating a balance due of more than $1 million in back contributions, interest, and penalties.

53.    Eagle was subsequently audited again, this time for the years 2010-2013.  A new assessment was provided and, to date, the NJDOL contends Eagle owes more than $2 million

in back contributions, interest and penalties for the period 2006-2013. In addition, Eagle could be subject at any time to an additional audit for the years 2014 to the present.

54.   The second audit was also conducted by NJDOL investigator Matthew, who similarly and summarily determined all of Eagle's Owner-Operators were employees and not independent contractors.

55.   In reaching his determination, Matthew conducted a lawless audit, ignoring NJDOL regulations, and doing nothing more than simply adding all IRS Form 1099 payments Eagle made during the relevant time period and conclusorily determining 100% of these payments were taxable wages made to employees.

56.   There is substantial evidence Matthew knew or should have known he conducted a sham-audit and simply provided a naked assessment of liability to Eagle based upon nothing more than adding up 1099 payments.

57.   For example, the NJDOL included assessments against Eagle for payments made by Eagle to a third-party property management company for the rental of office space, which Matthew knew or should have known is unequivocally not taxable wages.

58.   In addition, Matthew and the NJDOL Matthew knew or should have known 100% of compensation paid by Eagle to Owner-Operators was not (and could not be) taxable wages.

59.   Under the NJUCL and accompanying regulations, employers' contributions are computed regarding "wages" or "remuneration," which must be reported to the State. N.J.A.C. § 12:16-2.1; § 12:16-2.2; § 12:16-5.3.

60.   "Wages" are defined as "remuneration paid by employers for employment." N.J.S.A. § 43:21-19(o). "Remuneration" is further defined as "all compensation for *personal services*." N.J.S.A. § 43:21-19(p) (emphasis added). The regulations further delineate other

types of "remuneration" under N.J.A.C. § 12:16-4.1 such as fringe benefits, tips and gratuities, stock options, temporary disability payments, and many other examples.

61.    However, 100% of the compensation paid by Eagle to Owner-Operators does *not* (and could not possibly) constitute personal services or taxable wages.  Rather, the vast majority of the compensation paid to Owner-Operators covered non-personal services, including the lease of the vehicle and monies used by the Owner-Operator to satisfy their own business expenses and costs, including fuel; tolls; licenses; insurance; repairs; and maintenance.

62.    These costs and are not "wages" or "remuneration" under N.J.S.A. 43:21-19(p) or N.J.A.C. 12:16-4.1.

63.    NJDOL representatives expressly conceded to Eagle, through counsel, that they absolutely knew only a portion of the total compensation paid to Owner-Operators constituted "wages" or remuneration" for personal services; yet despite this admission, the NJDOL assessed Eagle for 100% of the total compensation paid.

64.    The NJDOL also ignored the fact that Eagle must comply with federal regulations.  Instead, the NJDOL turned these regulations on their head by using Eagle's compliance with federal law as "evidence" of employee status.

65.    For example, Matthew's auditor's report contends Eagle had significant control over the Owner-Operator because the "contract provided by Eagle page 2 of 14 states 'Carrier shall have exclusive possession, control and use of the equipment and assumes complete responsibility for the operation of the equipment for the duration of the lease.'"  Yet Matthew and the NJDOL knew or should have known this contract language is federally mandated by the FMCSA at 49 C.F.R. 376.12(c)(1).

66.    Matthew's auditor's report further cites to additional items as evidence of impermissible control, such as drug testing, requiring drivers to provide log books, and certain training that is provided.  Yet, again, Matthew and the NJDOL knew or should have known all of these requirements are federally mandated.

67.    Matthew was told several times by Burns and Hensal that Eagle was federally mandated to comply with FMCSA regulations; yet Matthew willfully ignored these facts in his assessment.

68.    Finally, Matthew and the NJDOL refused to conduct the 20-factor FUTA test as mandated by the NJDOL's own regulations.  With no analysis into the 20-factor test whatsoever, Matthew concluded the Owner-Operators which contract with Eagle were independent contractors under the ABC test.

69.    Matthew's misuse of the ABC test was a foregone conclusion because the auditor's report summarily concluded Eagle could not satisfy the "(B)" prong of the test—as Owner-Operators "are an integral part of Eagle's operation."  Under this rationale, there is *no* set of circumstances under which Eagle or the Class Members could demonstrate to the satisfaction of the NJDOL that its or their Owner-Operators were independent contractors.

70.    The NJDOL knew or should have known its assessment of back contributions, interest, and penalties lacked a legal or factual foundation, was unsupported by documentary evidence, and was arbitrary, erroneous, and contrary to law.

71.    The assessment deprived Eagle of its property (monies) in violation of the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of the New Jersey Constitution.

**D.  Preliminary Proceedings of the OAL Matter and the NJDOL's Acknowledged Rejection of its Own Enforcement Policy.**

72.   On or about October 26, 2011, Eagle appealed the assessments and penalties to the OAL.

73.   The NJDOL moved for summary disposition on August 13, 2015.

74.   Remarkably, the NJDOL refused to enforce its own regulation allowing Eagle and the Class Members to utilize the IRS 20-factor test for independent contractor status:

> It is the Department's position that N.J.A.C. 12:16-23.2(a)(4) [] conflicts with State and federal unemployment laws, is invalid and therefore unenforceable.  With no corresponding exemption under FUTA, it is undisputed that the workers' services are not exempt under N.J.S.A. 43:21-19(i)(7)(X).

NJDOL Br. for Summary Disposition at 7.

75.   The NJDOL both admitted it conducted no 20-factor test during the audit and stated it need not conduct a FUTA analysis at all because its *own* regulation, N.J.A.C. 12:16-23.2(a)(4), purportedly is "invalid and unenforceable."

76.   Though the OAL denied the NJDOL's motion, the NJDOL admitted it acted in direct contravention of New Jersey's Administrative Procedure Act by engaging in willful non-compliance with its own regulation, rather than go through the requisite administrative procedure required to modify mandated regulations.[1]

77.   Agencies like the NJDOL must comply with and cannot unilaterally reject their own lawfully promulgated regulations.

---

[1] Not surprisingly, the NJDOL subsequently issued proposed regulations (PRN 2018-028) seeking to eliminate N.J.A.C. 12:16-23.2(a)(4) entirely.  This affects Eagle and the Class Members and would eliminate the use of the federal common law test under FUTA for the twenty-six (26) specialized exemptions set forth at N.J.S.A. 43:21-19(i)(7).  Should PRN 2018-028 become implemented into law, Plaintiff reserves the right to amend this Complaint to allege that the implementation of this new regulation also is a direct violation of the FAAAA.

78.    Given agency rules have the force and effect of law, they are binding and must be obeyed.

79.    NJDOL's abdication of its obligation to enforce its regulations violated and continues to violate Eagle's and the Class Members' rights to Due Process.

80.    Before the Eagle audit, the NJDOL historically found the IRS 20-factor test applies to those specialized exemptions found under N.J.S.A. § 43:21-19(i)(7), which would include the Owner-Operator Exemption and motor carriers such as Eagle and the Class Members.[2]

81.    After the Eagle audit, the NJDOL's position that motor carrier Owner-Operators are employees, not independent contractors, also was prohibited by then-Commissioner of Labor Aaron R. Fichtner, Ph.D., who rejected the conclusion that the Owner-Operator Exemption at N.J.S.A. 43:21-19(i)(7)(X) does not apply to these driver services.[3]

82.    Commissioner Fichtner confirmed what was and remains current, binding law: Owner-Operators are subject to the IRS 20-factor test in determining whether they are independent contractors or employees.

83.    Yet by ignoring this precedent and mischaracterizing independent Owner-Operators as employees, the NJDOL ignored New Jersey law, binding precedent, and its own regulation.

84.    In doing so, it acted *ultra vires*, arbitrarily and capriciously assessing taxes and penalties against Eagle and the Class Members without due process.

---

[2] *See C&J Travel, Inc., t/a Accent on Travel v. New Jersey Department of Labor*, OAL Dkt. No. LID 4377-00, 2001 N.J. AGEN LEXIS 332 (June 20, 2001), *adopted by Commissioner*, 2001 N.J. AGEN LEXIS 1512 (July 27, 2001)

[3] *See Big Daddy Drayage, Inc. v. New Jersey Department of Labor and Workforce Development*, OAL Dkt. No. LID 17680-16, 2017 N.J. AGEN LEXIS 1175 (Dec. 11, 2017).

**FIRST COUNT**
**42 U.S.C. § 1983**
**Fourteenth Amendment—Substantive Due Process—Violations of the**
**New Jersey Administrative Procedure Act**

85.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs as though set forth herein.

86.    At all times relevant hereto, the conduct of Defendant, acting under the color of state law, was subject to 42 U.S.C. § 1983.

87.    The New Jersey Administrative Procedure Act ("APA") requires notice and comment before the State may enact or modify regulations.

88.    The NJDOL unilaterally and summarily changed its enforcement scheme without notice or the opportunity for comment.

89.    In doing so, the NJDOL created a *de facto* new regulation in violation of the APA, simultaneously violating Eagle's and the Class Members' substantive Due Process rights by depriving them of property.

90.    Defendant has unlawfully reversed the way the NJDOL evaluates whether workers are independent contractors or employees under well-entrenched and well-settled law by issuing tax assessments, interest, and penalties against Eagle and the Class Members.

91.    Defendant's refusal to acknowledge the Owner-Operator exemption, N.J.S.A. 43:21-10(i)(7)(X) through non-compliance with N.J.A.C. 12:16-23.2(a)(4), is unlawful and violates the APA.

92.    The NJDOL summarily imposed tax assessments against Eagle which have no basis in fact or law.

93.    The NJDOL is charged with enforcing its regulations.

94.    The NJDOL has abdicated this legal mandate, shocking the conscience by engaging in arbitrary, capricious, and unlawful behavior that has had a deleterious effect on Eagle's and the Class Members' business.

95.    Eagle and the Class Members have no adequate remedy at law.

96.    Such a change of enforcement policy in violation of the APA also violates the Due Process Clause of the Fourteenth Amendment, as the NJDOL's *ultra vires* rulemaking has caused Eagle and other motor carriers in the industry to be assessed millions of dollars of taxes and penalties.

97.    Plaintiffs are entitled to injunctive relief halting the OAL Matter, and award of reasonable counsel fees, and such other relief as the Court deems equitable and just.  In addition, Eagle is entitled to an abatement of the assessments charged by the NJDOL through its arbitrary assessments.

**SECOND COUNT**
**42 U.S.C. § 1983**
**Fourteenth Amendment – Substantive Due Process – Naked Tax Assessments**

98.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs as though set forth herein.

99.    At all times relevant hereto, the conduct of Defendant, acting under the color of state law, was subject to 42 U.S.C. § 1983.

100.   Under the New Jersey Unemployment Compensation Law and accompanying regulations, employers' contributions are computed regarding "wages" or "remuneration," which must be reported to the State.  N.J.A.C. 12:16-2.1; 12:16-2.2; 12:16-5.3.

101.   Wages" are defined as "remuneration paid by employers for employment." N.J.S.A. 43:21-19(o).  "Remuneration" is further defined as "all compensation for *personal services*."  N.J.S.A. 43:21-19(p) (emphasis added).

102.  The NJDOL knew or should have known it assessed unemployment taxes against Eagle for non-personal services such as rent; the cost of leasing a vehicle; and reimbursement of business expenses such as fuel, tolls and repairs, among other things.

103.  The NJDOL made naked tax assessments with no evidentiary foundation.

104.  Through these naked tax assessments, Eagle and the Class Members have been financially damaged.

105.  An injunction halting the OAL Matter and stopping NJDOL's lawless assessment methods for the Class Members is warranted.

106.  Eagle and the Class have no remedy at law.

107.  Such naked tax assessments are contrary to law and violate Eagle's and the Class Members' substantive due process right to property under the Due Process Clause of the Fourteenth Amendment.

108.  Plaintiffs are entitled to injunctive relief, and award of reasonable counsel fees, and such other relief as the Court deems equitable and just.   In addition, Eagle is entitled to an abatement of the assessments charged by the NJDOL through its naked assessments.

### THIRD COUNT
### Violation of the Federal Aviation Administration Authorization Act
### 49 U.S.C. § 14501(c)(1)

109.  Plaintiff hereby incorporates by reference all of the foregoing paragraphs as though set forth herein.

110.  New Jersey law sets forth a three-part test, commonly called the "ABC Test," to determine whether a worker is an independent contractor.

111.  N.J.S.A. 43:21-19(i)(6)(A), (B), and (C) require a finding that a worker meet all three elements to be designated as an independent contractor.

112.  Under statute, regulation, and precedent, Eagle may establish its workers are independent contractors through the IRS 20-factor test, rather than the ABC Test.

113.  In its audit, the NJDOL misapplied the ABC Test in classifying Eagle's and the Class Members' Owner-Operator independent contractors as employees.

114.  In addition, the NJDOL claims no circumstances exist under which an Owner-Operator be qualified as an independent contractor under the ABC Test, in part because they are considered an "integral part" of any motor carrier's business.

115.  The ABC Test is preempted by the FAAAA, 49 U.S.C. § 14501(c)(1) under the Supremacy Clause of the Constitution.  U.S. CONST. Art. XI, Cl. 2.

116.  To prevent states from impermissibly restricting motor carriers engaged in interstate commerce, Congress employed broad preemption language in the FAAAA. Congress explicitly sought to ensure that interstate motor carriers can provide services subject exclusively to a uniform body of federal law.

117.  The FAAAA, provides that a "State may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier[.]"

118.  Application of the ABC Test by its very terms violates that proscription.

119.  Applying the ABC Test as it relates to motor carriers to classify workers as employees, rather than independent contractors, directly affects the prices, routes, and services that Eagle and all other motor carriers in New Jersey provide.

120.  The broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' prices.

121.  Employing the ABC Test to find individuals are employees rather than independent contractors is disastrous to Eagle's business model: Having to maintain employees

on payroll to meet unpredictable and time-critical delivery needs, rather than engaging independent contractors on an as-needed basis, is costly, inefficient, and wasteful.

122. Using Owner-Operator independent contractors, Eagle and the Class Members can avoid having to maintain a full staff during slower periods to anticipate periods of heightened demand. They can also keep expenses down. The benefits of the independent contractor relationship inure to both motor carriers *and* Owner-Operators, who set their own schedules, get paid by the load, own their own vehicles, and can work for other motor carriers or work different other jobs.

123. In enacting the FAAAA, Congress intended to eliminate a patchwork of states' laws and regulations governing the "prices," "routes," or "services" of motor carriers, and the FAAAA was specifically designed to provide an exclusive uniform body of federal law involving the regulation of motor carriers.

124. Both Congress and the U.S. Supreme Court recognize that a sheer diversity of state laws posed a tremendous problem for national and regional carriers attempting to conduct a standard way of doing business for interstate commerce.

125. State laws such as the ABC Test, having a connection with, or reference to carriers "rates, routes, or services" are preempted.

126. Here, application of the ABC Test to Owners-Operators may cause the misclassification of Owner-Operators as employees, and thus the ABC Test would directly affect the prices, routes, and services of motor carriers such as Eagle and members of the putative class.

127. Plaintiffs are entitled to injunctive relief, and award of reasonable counsel fees, and such other relief as the Court deems equitable and just. In addition, Eagle is entitled to an

abatement of the assessments charged by the NJDOL through the NJDOL's improper

application of the ABC Test.

## FOURTH COUNT
### New Jersey Constitution Article I, Paragraph 1 – Substantive Due
### Process – Violations of the APA

128.  Plaintiff hereby incorporates by reference all of the foregoing paragraphs as

though set forth herein.

129.  Defendant has unlawfully reversed the way the NJDOL evaluates whether

workers are independent contractors or employees under well-settled law by issuing tax

assessments, interest, and penalties against Eagle and the Class Members.

130.  Defendant has claimed that N.J.A.C. 12:16-23.2(a)(4) is an unlawful regulation

and stopped enforcing it, contrary to the dictates of the New Jersey APA.

131.  The NJDOL summarily took this position resulting in tax assessments against

Eagle that have no basis in fact or law.

132.  The NJDOL is charged with enforcing its regulations.

133.  The NJDOL abdicated this legal mandate, shocking the conscience by engaging in

arbitrary, capricious, and unlawful behavior that has had and will continue to have a

deleterious effect on Eagle's and the Class Members' business.

134.  By reversing its position without providing notice to or seeking comment from the

public, the NJDOL has committed gross violations of the APA, which requires substantial

procedural and substantive undertaking before new regulations are adopted.

135.  The NJDOL has thus deprived Eagle and the Class Members of substantial

property violating their Due Process rights under the New Jersey Constitution.

## FIFTH COUNT
### New Jersey Constitution Article I, Paragraph 1 – Substantive Due Process – Naked Assessments

136.  Plaintiff hereby incorporates by reference all of the foregoing paragraphs as though set forth herein.

137.  At all times relevant hereto, the conduct of Defendant, acting under the color of state law.

138.  Under the NJUCL and accompanying regulations, employers' contributions are computed regarding "wages" or "remuneration," which must be reported to the State.  N.J.A.C. 12:16-2.1; 12:16-2.2; 12:16-5.3.

139.  "Wages" are defined as "remuneration paid by employers for employment." N.J.S.A. 43:21-19(o).  "Remuneration" is further defined as "all compensation for *personal services*."  N.J.S.A. 43:21-19(p) (emphasis added).

140.  The NJDOL knew or should have known it assessed unemployment taxes against Eagle for non-personal services such as rent, the cost of leasing a vehicle, and reimbursement of business expenses such as fuel, tolls and repairs, among other things.

141.  The NJDOL has thus made naked tax assessments with no evidentiary foundation.

142.  Through these naked tax assessments, Eagle and the Class have been financially damaged and only an injunction halting the hearing involving Eagle and halting NJDOL's assessment methods will Eagle and the Class receive redress for their injuries.

143.  Such naked tax assessments are contrary to law and violate Eagle's and the Class Members' substantive due process right to property under the Due Process Clause of the New Jersey Constitution.

## SIXTH COUNT
### Contracts Clause of the U.S. Constitution, Art. I, Sec. 10, Cl. 1

144.  Plaintiff hereby incorporates by reference all of the foregoing paragraphs as though set forth herein.

145.  The Contracts Clause of the Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."  Art. I, Sec. 10, Cl. 1.

146.  The NJDOL's change of its enforcement policy regarding motor carriers and refusal to enforce its own duly enacted regulations have had the effect and will continue to impair with the lease agreements between Eagle, the Class Members, and the Owner-Operators.

147.  The NJDOL is substantially impairing the contractual relationships between Eagle, the Class Members, and the Owner-Operators.

148.  The impairment worsens an already thin labor market for truck drivers for motor carriers like Eagle and other the Class Members.  By assessing taxes on Eagle and other the Class Members, the NJDOL is rupturing the Owner-Operator-Motor Carrier relationship by impinging on its economic autonomy.

149.  Such intrusion into private contracts have had deleterious effects on Eagle and the Class Members by disrupting a business model that has been ongoing without incident for over eighty years.

150.  Such state interference violates Eagle's and the Class Members' freedom to contract with Owner-Operators to facilitate the free flow of interstate commerce.

## SEVENTH COUNT
### Declaratory Relief

151.  Plaintiff hereby incorporates by reference all of the foregoing paragraphs as though set forth herein.

152.  Plaintiff and Class Members bring this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to obtain a declaration of their rights regarding the Owner-Operator Exemption and the ABC Test.

153.  As alleged above, an actual controversy has arisen and now exists within the meaning of 28 U.S.C. § 2201, as to whether the ABC Test is preempted by the FAAAA under the Supremacy Clause of the United States Constitution, and whether the NJDOL's audit practices are unlawful as set forth herein.

154.  The Court has the power to adjudicate the rights of the parties regarding this controversy and should grant declaratory relief under 28 U.S.C. § 2201.

**WHEREFORE**, Eagle demands judgment in its favor and against Defendant as follows:

(1)    Granting a preliminary and permanent injunction enjoining and restraining the OAL from proceeding in *Eagle Intermodal, Inc. v. NJ Department of Labor*, OAL Docket Nos.: LID 04801-2012, 02720-2017; Agency Ref Nos. 12-002, 17-003 until further order of this Court;

(2)    Granting a preliminary and permanent injunction enjoining and restraining the NJDOL from summarily classifying Eagle's and the Class Members' Owner-Operator independent contractors as employees until further order from this Court;

(3)    Granting a preliminary and permanent injunction enjoining and restraining the NJDOL from performing naked tax assessments on Eagle and the Class Members;

(4)    Granting a preliminary and permanent injunction enjoining and restraining NJDOL from unlawfully assessing unemployment taxes against Eagle and the Class for independent contractor Owner-Operators;

(5)     Granting a preliminary and permanent injunction enjoining and restraining the

NJDOL from applying the ABC Test in classifying Eagle's and the Class Members' Owner-

Operator independent contractors;

(6)     Abating the contributions, interest and penalties assessed by the NJDOL against

Eagle;

(7)     Awarding attorneys' fees and costs to Eagle and the Class Members under 42

U.S.C. § 1988;

(8)     Awarding interest and costs of suit to Eagle and the Class Members; and

(9)     Awarding such other and further relief as the Court may deem just and proper.

**FORDHARRISON LLP**


By:   s/*Salvador P. Simao*
   Salvador P. Simao
   300 Connell Drive, Suite 4100
   Berkeley Heights, New Jersey 07922
   Phone: (973) 646-7300
   *Attorneys for Plaintiff Eagle Systems, Inc.*
   *and the Putative Class*

Dated:  July 8, 2018

WSACTIVELLP:9888036.1