NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EAGLE SYSTEMS, INC., on behalf of itself
and all others similarly situated,

          Plaintiff,

v.

ROBERT ASARO-ANGELO, in his official
capacity,

          Defendant.

Civil Action No. 18-11445 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

      This matter comes before the Court upon Plaintiff Eagle Systems, Inc.'s ("Plaintiff" or "Eagle Systems") Motion for an Order to Show Cause. (ECF No. 7.) Defendant Robert Asaro-Angelo ("Defendant"), in his official capacity as the Commissioner of the Department of Labor and Workforce Development of the State of New Jersey, opposed. (ECF No. 19.) Plaintiff replied. (ECF No. 25.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion for an Order to Show Cause is denied.

**I.    BACKGROUND**

      As the Court writes primarily for the parties, it assumes the parties' familiarity with the lengthy procedural history and facts giving rise to the instant dispute. Plaintiff[1] was audited by

---

[1] Plaintiff is a Washington state corporation, with its principal place of business located in Washington, and provides "terminal management and maintenance, contained yard management, and various trucking services including drayage service." (Compl. ¶¶ 15, 35, ECF No. 4.)

the Department of Labor and Workforce Development of the State of New Jersey ("NJDOL"), and the NJDOL determined that some, but not all, of Plaintiff's drivers were "employees" pursuant to New Jersey's ABC Test[2] and Plaintiff owed over $2,000,000 in taxes and penalties. (Compl. ¶¶ 54-57.)[3] On October 26, 2011, Plaintiff appealed the NJDOL's assessments and penalties, and the appeal was brought before the New Jersey Office of Administrative Law (the "OAL Proceeding"). (*Id.* ¶ 77.)

On August 13, 2015, the NJDOL moved for summary disposition of the OAL Proceeding. (*Id.* ¶ 78.) In its brief, the NJDOL argued that a certain provision of the New Jersey Administrative Code was "invalid and therefore unenforceable." (*Id.* ¶ 79.) The NJDOL subsequently issued

---

[2] The New Jersey Unemployment Compensation Law ("NJUCL"), N.J. Stat. Ann. § 43:21-1, *et seq.*, establishes a presumption that "services performed by an individual for remuneration" constitutes "employment," and that an individual is an employee, unless the employer establishes to the NJDOL's satisfaction that:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of the business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J. Stat. Ann. § 43:21-19(i)(6)(A)-(C). This three-factor test is known as the "ABC Test." If an employer demonstrates that all three factors are satisfied with respect to an individual, then the individual is deemed not an employee, and the entity is exempt from making certain contributions under the NJUCL.

[3] On October 5, 2018, Plaintiff filed a First Amended Class Action Complaint which the Court refers to as the "Complaint". (*See* ECF No. 4.) Plaintiff did not seek leave to file the Complaint, nor did Plaintiff indicate that Defendant consented to the filing of the Complaint. Pursuant to Federal Rule of Civil Procedure 15(a)(2) and the requirement that "[t]he court should freely give leave" to amend, the Court grants Plaintiff leave to amend.

2

proposed regulations eliminating that provision, and those regulations were adopted on September 17, 2018.[4] (*Id.* ¶¶ 80 n.1, 99.)

Plaintiff initiated this matter on July 8, 2018, and states that the instant matter was filed "in anticipation of the need to stay the OAL Proceeding . . . ." (Pl.'s Moving Br. 9-10, ECF No. 7-1.) Plaintiff brings seven substantive counts against Defendant and in the eighth count seeks declaratory relief pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202. Plaintiff seeks a declaration that the Federal Aviation Authorization Administration Act of 1994 ("FAAAA"), 49 U.S.C. §§ 14501-06, preempts New Jersey's ABC Test. (*Id.* ¶ 172.)

On December 5, 2018, Eagle Systems filed the instant Motion for an Order to Show Cause ("OTSC"). (Order to Show Cause, ECF No. 7.) Plaintiff seeks an OTSC (1) "enjoining and restraining the hearing of the [OAL Proceeding], and (2) enjoining the NJDOL from:

> (i) [A]pplying the ABC Test in classifying Eagle's and the Class Members' Owner-Operator[s] as independent contractors; (ii) summarily classifying Eagle's and the Class Members' Owner-Operator independent contractors as employees; (iii) performing naked tax assessments on Eagle and the Class Members; (iv) unlawfully assessing unemployment taxes against Eagle and the Class Members for independent contractor Owner-Operators; and (v) abating the contributions, interest and penalties assessed by the NJDOL against Eagle and the Class Members . . . .

(Proposed Order 2, ECF No. 7.) Plaintiff states that a stay of the OAL Proceeding is necessary until the issues raised in the Complaint "are adjudicated because the OAL Proceeding is predicated on egregiously *ultra vires* and unlawful tax assessments made by the [NJDOL] against Eagle which are preempted by operation of federal law." (Pl.'s Moving Br. 1.) On January 14, 2019,

---

[4] The provision concerns one of the methods by which an employer may establish that services provided by an individual are exempt under the Federal Unemployment Tax Act ("FUTA"). New Jersey law provides that if an employer can establish that services provided are (1) exempt under FUTA and (2) consistent with one of the exemptions provided for by New Jersey law, the services provided by the individual are not considered "employment" and the employer is exempt from making certain contributions under the NJUCL.

3

Defendant opposed Plaintiff's Motion (Def.'s Opp'n Br., ECF No. 19), and on February 14, 2019, Plaintiff replied (Pl.'s Reply Br., ECF No. 25).

## II. LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). To obtain a preliminary injunction, the moving party must establish:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (alterations in original) (quoting *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999) (citation omitted).

The moving party must first establish the two "most critical" factors—likelihood of success on the merits and irreparable injury—before the Court considers the possibility of harm to others and the public interest. *Reilly*, 858 F.3d at 179. On the first factor, the moving party must establish a likelihood of success on the merits "which requires a showing significantly better than negligible but not necessarily more likely than not . . . ." *Id.*

## III. DISCUSSION

As a threshold matter, the Court notes that neither party has addressed whether the Court has subject matter jurisdiction over this matter in light of the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA is "construed to prohibit the district courts from granting declaratory relief in cases involving constitutional challenges to state tax acts." *Hardwick v. Cuomo*, 891 F.2d 1097, 1104 (3d Cir. 1989). The TIA is also applicable to pursuant to 42 U.S.C. § 1983 ("Section 1983") claims. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981) ("[T]axpayers are barred by the principle of comity from asserting [Section] 1983 actions against the validity of state tax systems in federal courts."). "[T]axpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in [the United States Supreme Court]." *Id.* (footnote omitted). If the TIA applies to this matter, it deprives the Court of subject matter jurisdiction. *Hardwick*, 891 F.2d at 1103-04.

The Third Circuit has recognized that a narrow exception to the TIA applies when the state does not provide "a plain, speedy and efficient remedy in its courts for the taxpayer['s] claims." *Hardwick*, 891 F.2d at 1104-05. "For a state remedy to be adequate, it must satisfy certain *procedural* criteria[,]" and "a state remedy [is] sufficient if it provides the taxpayer with a full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections." *Id.* at 1105 (quoting *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982)) (quotations marks omitted) (emphasis in original). "Federal courts must decline jurisdiction in state tax cases where the State gives the plaintiff a procedure by which to have his/her claims

5

heard. The availability of the specific remedy sought is not relevant." *Frybarger v. N.J. Dep't of Treasury*, No. 05-4648, 2006 WL 3827331, at *3 (D.N.J. Dec. 27, 2006).

This action appears to constitute a state tax case, and as such, the Court's subject matter jurisdiction is in doubt. Each of Plaintiff's claims is related to the NJDOL's tax audit of Plaintiff or Defendant's conduct during the OAL Proceeding. Nothing on the face of the Complaint suggests that the OAL Proceeding and any subsequent appeal to New Jersey's courts will not satisfy the procedural criteria the United States Supreme Court identified in *Grace Brethren Church*. On the other hand, there may be facts or issues that place this matter outside of the TIA's scope. The parties have not substantively briefed whether the TIA deprives the Court of subject matter jurisdiction.[5] Thus, for the limited purpose of resolving the instant motion, the Court assumes, but does not find, that it has subject matter jurisdiction.[6]

### A. Plaintiff Failed to Establish Likelihood of Success on the Merits

Plaintiff argues that the legal standard for injunctive relief is met because all four factors are satisfied. (*See* Pl.'s Moving Br. 1.) Defendant opposes the Court's grant of injunctive relief, arguing that none of the factors are met. (*See* Def.'s Opp'n Br. 1.) The Court finds that Plaintiff has not met its burden of establishing the likelihood of success on its primary claim, and the issue that is at the center of the instant matter, whether the FAAAA preempts the ABC Test.

---

[5] Defendant's arguments in support of its Motion to Dismiss are (1) that the FAAAA does not preempt the ABC Test; (2) that Plaintiff failed to state valid Section 1983 and Contract Clause claims; (3) that the *Younger* abstention doctrine applies; and (4) that the Court should decline to exercise supplemental subject matter jurisdiction over Plaintiff's state law claims. (*See generally* Def.'s Moving Br., ECF No. 15-1.) Thus, Defendant assumes that the Court has subject matter jurisdiction over Plaintiff's request for declaratory relief and federal claims. Defendant references the TIA in passing for the first time in its Reply Brief in relation to Defendant's motion. (Def.'s Reply Br. 11-12, ECF No. 30.) Defendant mentions the TIA in the context of Defendant's argument that Plaintiff's Section 1983 claims fail. (*Id.*)

[6] The Court will issue an order simultaneously with this Memorandum Opinion requiring Plaintiff to address the Court's subject matter jurisdiction concerns.

### 1. Plaintiff Likely Cannot Establish FAAAA Preemption

Plaintiff advances four theories in support of its argument that it is likely to succeed on the merits of its FAAAA preemption claim. (Pl.'s Moving Br. 28-35.) On Reply, Plaintiff expands significantly on its primary argument—the FAAAA preempts the ABC Test—and advances a new argument regarding preemption pursuant to other federal laws. (*See* Pl.'s Reply Br. 2-28.) The Court will consider Plaintiff's expanded argument, but the Court will not consider Plaintiff's new arguments regarding preemption pursuant to laws other than the FAAAA. *See Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 258 n.1 (3d Cir. 2007) ("Absent compelling circumstances not present here, failure to raise an argument in one's opening brief waives it.").

Plaintiff argues that the NJDOL's "unilateral determination that the IRS 20-[F]actor [T]est is invalid bars [Plaintiff] and every other New Jersey trucking company from ever again using Owner-Operators[,]" and this "will have a direct, unavoidable, and substantial impact on 'prices, routes, or services' for New Jersey-based motor carriers and conflicts with the deregulated transportation market—both of which Congress intended to preempt through the [FAAAA]." (Pl.'s Moving Br. 16.) Plaintiff cites to the First Circuit's opinion in *Schwann v. FedEx Ground Package System*, 813 F.3d 429 (1st Cir. 2016), in support of its position. (*Id.* at 17.) Per Plaintiff, the First Circuit found that prong B of Massachusetts's version of the ABC Test[7] was preempted because "the regulatory scheme would 'in substance, bar FedEx from using any individual[] as full-fledged independent contractors.'" (*Id.* at 18 (quoting *Schwann*, 813 F.3d at 437).)

---

[7] Prong B of the Massachusetts's version of the ABC Test requires the employer to show that "the service is performed outside the usual course of the business of the employer . . . ." Mass. Gen Laws ch. 149, § 148B.

Additionally, Plaintiff insists that *Schwann* shows that prong B of the ABC Test[8] runs counter to Congress's intent because it imposes state regulation on issues that were better left to a competitive market. (*Id.*)

Applying the *Schwann* holding to the instant matter, Plaintiff argues that the application of the ABC Test, "which every New Jersey trucking company will fail" will be "calamitous" because prong B of the ABC Test is preempted by the FAAAA. (*Id.* at 19.) Plaintiff insists that the NJDOL's determination is preempted "because it yields an anti-competitive result . . . ." (*Id.*) Plaintiff also argues that the NJDOL's determination creates "significant barriers to entry, which the FAAAA precludes." (*Id.* at 19.)

In its Reply Brief, Plaintiff bolsters its preemption argument in light of the Third Circuit's holding in *Bedoya v. American Eagle Express Inc.*, 914 F.3d 812 (3d Cir. 2019).[9] Plaintiff argues that the instant matter is distinguishable from *Bedoya* because *Bedoya* concerned a private dispute in which the state had taken no action. (Pl.'s Reply Br. 7.) According to Plaintiff, this dispute "arises from the NJDOL's audit of Eagle's operations whereby the NJDOL enforced, interpreted and operated the ABC Test in a manner to conclusively determine that all of the Owner-Operators who contracted with Eagle were 'employees,' and not independent contractors." (*Id.* (internal citations omitted).) Moreover, the NJDOL's position "mandated . . . that Eagle, and similarly situated Class Members, must provide services by utilizing employees rather than contractors." (*Id.*) Per Plaintiff, these differences are significant because the Supreme Court has stated that "a

---

[8] Prong B of the ABC Test requires the employer to show that the "service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed . . . ." N.J. Stat. Ann. § 43:21-19(i)(6)(B).

[9] In *Bedoya*, which was decided after Defendant filed his opposition and prior to Plaintiff filing its reply, the Third Circuit addressed whether the FAAAA preempted two New Jersey employment laws. *See Bedoya*, 914 F.3d at 816.

proper analysis requires consideration of what a state law in fact does, not how the litigant might choose to describe it." (*Id.* at 7-8 (quoting *Wos v. E.M.A.*, 568 U.S. 627, 637 (2013)).)

Plaintiff insists that the Court "must consider the operative effect of the ABC Test as enforced by the NJDOL." (*Id.* at 10.) Building on this principle, Plaintiff argues that Defendant's position that the ABC Test does not force Plaintiff to choose one business over another is inaccurate and ignores certain facts. (*Id.* at 11.) Plaintiff states, "the NJDOL's misuse of the ABC Test was a foregone conclusion because the auditor's reports summarily concluded Eagle [Systems] could not satisfy the 'B' prong of the test[,]" because the report stated that "the services performed by Owner-Operators are an 'essential part of Eagle [Systems's] business model' because Eagle 'relies on these drivers to haul the containers from the port to its final destination in an efficient and safe manner.'" (*Id.* at 12 (quoting Mot. for OTSC, Ex. 1 ("Audit Reports"), ECF No. 7-3).) Plaintiff alleges that the NJDOL failed to consider whether the services performed by Owner-Operators were outside Plaintiff's place of business, thus enforcing the ABC Test in a manner similar to *Schwann*. (*Id.*) Per Plaintiff, "there is no set of circumstances under which Eagle or the Class Members could demonstrate to the satisfaction of the NJDOL that its or their Owner-Operators were independent contractors." (*Id.*) Plaintiff, thus, argues that "insofar as the ABC Test would operate to require motor carriers to exclusively utilize employees, such operations would be preempted by the FAAAA and invalid." (*Id.* at 13.)

Here, the Third Circuit's guidance in *Bedoya* requires the Court to conclude that Plaintiff cannot establish that it is likely to succeed on the merits of its preemption claims. The issue before the Third Circuit in *Bedoya* was whether the FAAAA preempts the ABC Test for purposes of New Jersey's Wage and Hour Law ("NJWHL") and New Jersey's Wage Payment Law ("NJWPL"). *Bedoya*, 914 F.3d at 816. The *Bedoya* plaintiffs were truck drivers who brought a putative class

action against their employer for classifying them as independent contractors when, in the plaintiffs' view, they were employees pursuant to the NJWHL and NJWPL. *Id*. at 815-16. The defendant moved for judgment on the pleadings, arguing that the drivers' claims were preempted by the FAAAA. *Id.* at 816. The district court denied the defendant's motion and the Third Circuit affirmed. *Id.*

From Supreme Court precedent and persuasive authority from other Circuits, the Third Circuit distilled numerous factors courts should examine when determining (1) "the directness of a law's effect on prices, routes, or services" and (2) "whether a law has a significant effect on a carrier's prices, routes, or services . . . ." *Id.* at 823. Applying these factors, the Third Circuit concluded:

> New Jersey's ABC [Test] is not preempted as it has neither a direct, nor an indirect, nor a significant effect on carrier prices, routes, or services. Any effect [the ABC Test] has on prices, routes, or services is tenuous. The test does not mention carrier prices, routes, or services, nor does it single out carriers. Indeed, the test applies to all businesses as part of the "backdrop" they "face in conducting their affairs." . . . [I]t only concerns employer-worker relationships. Laws governing how an employer pays its workers do not "directly regulate[ ] how [a carrier's] service is performed[;]" they merely dictate how a carrier "behaves as an employer[.]" As a result, the test is "steps removed" from regulating customer-carrier interactions through prices, routes, or services.

*Id*. at 824 (citations omitted). The Third Circuit found that the ABC Test was distinguishable from Massachusetts's version of the ABC Test at issue in *Schwann* because the ABC Test "does not bind [the employer] to a particular method of providing services . . . ." *Id.* Specifically, the Massachusetts version "does not include New Jersey's alternative method for reaching independent contractor status—that is, by demonstrating that the worker provides services outside of the putative employer's 'places of business.'" *Id.* (quoting N.J. Stat. Ann. § 43:21-19(i)(6)(B)).

10

Here, the Third Circuit's holding in *Bedoya* significantly undermines Plaintiff's arguments regarding preemption of the ABC Test by the FAAAA. Plaintiff's attempts to distinguish the instant matter from the facts and procedural posture of *Bedoya* are not supported by any authority suggesting that those differences require a different result in this matter. Thus, Plaintiff's attempts to distinguish *Bedoya* are unpersuasive.

Plaintiff cites *Wos v. E.M.A.* for the proposition that the Court must examine "what the state law in fact does, not how the litigant might choose to describe it." (Pl.'s Reply Br. 8 (citing *Wos*, 568 U.S. at 637).) When the Court adopts that approach, however, Plaintiff's arguments and recitation of the facts are significantly challenged.

As stated in *Bedoya*, under the ABC Test, "workers performing services for a given company in exchange for pay are deemed employees unless the company" can satisfy the three prongs of the test. *Id.* at 816. Thus, the burden is on Plaintiff to establish that the drivers providing services to Plaintiff are not employees through one of the exceptions or exclusions provided by New Jersey law. The record before the Court, namely two Audit Reports submitted as attachments to Plaintiff's moving brief, reflect that for a variety of reasons Plaintiff simply did not meet its burden to establish that its drivers were not employees. (*See generally* Audit Reports.)

The report for the first audit indicates that because of a lack of documentation from Plaintiff, the NJDOL's auditor, George Matthew ("Matthew"), "sent subcontractor letters to all owner-operators for years 2006-2009." (Audit Reports 14.)[10] The report indicates that sixty-three owner-operators contacted Matthew as a result of the letters and fourteen of the respondents were deemed "bonafide subcontractors based on interviews and supporting documents (i.e. tax returns)

---

[10] For the parties' convenience, when citing to the Audit Reports the Court uses the pagination imprinted by the CM/ECF system in the header on Docket Entry No. 7-3.

11

which indicated they had business income from other sources besides [Plaintiff]." (*Id.*) Matthew also concluded that three owner-operators were "nonbonafide and therefore taxable to" Plaintiff under New Jersey law. (*Id.*) The report further indicates that Matthew sent correspondence, including "questionnaires[,] to all 1099ed subcontractors in years 2010-2013 to document if they meet the IRS 20-Factor [T]est on employment status." (*Id.* at 19.) Matthew received "approximately [forty]" responses and he determined four of those individuals were "bonafide subcontractors". (*Id.*)

Given Matthew's conclusions that some of the drivers could satisfy the ABC Test, and thus were not employees, Plaintiff's statement that the NJDOL applied the ABC Test to conclude that *all* of the drivers were employees appears to be unsupported by the factual record. Similarly, Plaintiff's argument that there is no set of circumstances in which Plaintiff's drivers could satisfy the ABC Test is contradicted by the Audit Reports reflecting that the NJDOL determined that a number of Plaintiff's drivers satisfied the ABC Test. Also, Plaintiff's argument that Matthew's conclusions under Prong B were a "foregone conclusion" fails to account for Matthew's finding that some of the owner-operators were subcontractors.

Plaintiff argues that the NJDOL mandated that Plaintiff must use employees rather than contractors, however, a similar argument was rejected in *Bedoya*. In *Bedoya*, the Third Circuit distinguished New Jersey's ABC Test from the Massachusetts variant at issue in *Schwann*. *Bedoya*, 914 F.3d at 824. The Third Circuit stated that New Jersey's ABC Test "does not . . . bind [an employer] to a particular method of providing services." *Id.* Prong B of New Jersey's ABC Test "allows an employer to classify a worker as an independent contractor if it shows that the worker either provides a service that is [(1)]outside the [employer's] usual course of business . . . or [(2)]outside of all the places of business of [the employer]." *Id.* (internal quotations omitted).

Thus, New Jersey's ABC Test "does not mandate a particular course of action—e.g., requiring carriers to use employees rather than independent contractors—and it offers carriers various options to comply with New Jersey employment law," unlike Massachusetts's version of the ABC Test in *Schwann*. *Id.* at 825.

In sum, based on the record currently before it and the Third Circuit's holding in *Bedoya*, the Court finds that Plaintiff has not met its burden of establishing the likelihood of success on the merits of its claim that the FAAAA preempts the ABC Test.

### 2. Plaintiff Has Not Established a Likelihood of Success on its Naked Tax Assessment Claims

Plaintiff's "naked" tax assessment claims are premised on Plaintiff's allegations that the "NJDOL knowingly failed to apply the relevant law and regulations[,]" and taxed Plaintiff on all compensation paid to owner-operators. (Pl.'s Moving Br. 32.) Plaintiff argues that the assessments "were 'made without any foundation whatsoever . . . .'" (*Id.* (quoting *United States v. Janis*, 428 U.S. 433, 441 (1976)).)

Plaintiff cites legal authority regarding tax assessments levied by the Commissioner of the Internal Revenue Service and the tax authority in the Virgin Islands. (*See id.* at 32-33.) Conspicuously absent is any authority supporting Plaintiff's ability to bring its state-law based naked tax assessment claims in a federal district court. As discussed above, the TIA appears to bar such claims from being brought in this Court. Even if the TIA did not operate as a statutory bar, the principles of comity and restraint expounded upon in *Fair Assessment in Real Estate Association* and *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943), would prevent the Court from granting Plaintiff the relief it seeks. The Court, accordingly, finds that Plaintiff has not established a likelihood of success on the merits of its naked tax assessment claims.

### 3. Plaintiff Has Not Established a Likelihood of Success on the Merits of its Remaining Claims

Plaintiff brings claims based on the New Jersey Administrative Procedure Act ("NJAPA"), N.J. Stat. Ann. § 52:14B-1. (Compl. ¶¶ 100-112, 143-150, 166-169.) The NJAPA provides that "prior to the adoption, amendment, or repeal of any rule, except as may be otherwise provided," the NJDOL must comply with four principal requirements. N.J. Stat. Ann. § 52:14B-4(a)(1)-(4). The NJAPA's "requirements for an agency's adoption of a rule are unforgiving and contain no actual notice provision to save an improperly promulgated rule as there is under the federal Administrative Procedure Act." *United States v. Reeves*, 891 F. Supp. 2d 690, 705 (D.N.J. 2012).

Plaintiff has failed to establish a likelihood of success on the merits of its NJAPA-based claims because Plaintiff likely cannot establish that the NJDOL engaged in rule-making in violation of the NJAPA. The Court interprets Plaintiff's NJAPA-based claims to rely upon allegations regarding (1) actions taken by the NJDOL during the audit and (2) Defendant's arguments in its brief in support of its motion for summary disposition in the OAL Proceeding.[11] Plaintiff argues that the "NJDOL acted outside its authority when it unilaterally and without notice abrogated its own rules on the respective definitions of employees and independent contractors for the Commercial Truck Drivers Exemption to the State's unemployment tax law." (Pl.'s Moving Br. 29.) Plaintiff, however, has provided the Court no authority to support the position that actions taken by Defendant during the audit or the conclusions from the audit amount to rule-making in violation of the NJAPA. Similarly, Plaintiff has provided no authority to support the position that

---

[11] To the extent that Plaintiff alleges Defendant violated the NJAPA through its efforts in the formal rule-making process, such claims appear to be barred by Eleventh Amendment Sovereign Immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment . . . . [T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction.")

an argument advanced in a legal brief amounts to rule-making. The Court, accordingly, finds Plaintiff has failed to establish a likelihood of success on the merits of its NJAPA-based claims.

The Court finds that Plaintiff has failed to establish the likelihood of success on its Contracts Clause Claims. Article I, section 10, of the United States Constitution provides: "No State shall . . . pass any . . . ex post facto Law, or Law impairing the Obligation of Contracts . . . ." "In order to prove a violation of this constitutional provision, a plaintiff must demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship.'" *Transp. Workers Union of Am., Local 290 By & Through Fabio v. Se. Pa. Transp. Auth.*, 145 F.3d 619, 621 (3d Cir. 1998) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)). Here, for the same reasons Plaintiff likely cannot establish that the NDOL engaged in rule-making that violated the NJAPA, the Court finds that Plaintiff likely cannot establish that the NJDOL's conduct during the course of the audits or during the OAL Proceeding amounts to a change in state law.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has failed to establish likelihood of success on the merits of its claims. Because this factor is essential, the Court does not reach the other factors that must be satisfied to grant injunctive relief. The Court, accordingly, denies Plaintiff's Motion for an Order to Show Cause. An order consistent with this Memorandum Opinion will be entered.

s/Michael A. Shipp  
**MICHAEL A. SHIPP**  
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 31st, 2019