UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAGLE SYSTEMS, INC., on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>ROBERT ASARO-ANGELO, in his official capacity as THE COMMISSIONER OF LABOR AND WORKFORCE DEVELOPMENT OF THE STATE OF NEW JERSEY,<br><br>      Defendant. | Case No.: 3:18-cv-11445-MAS-DEA |

_____

**PLAINTIFF'S MEMORANDUM OF LAW REGARDING
INAPPLICABILITY OF THE TAX INJUNCTION ACT**
_____

                                                           **FORDHARRISON LLP**
                                                           300 Connell Drive, Suite 4100
                                                           Berkeley Heights, New Jersey 07922
                                                           Phone: (973) 646-7300
                                                           *Attorneys for Plaintiff Eagle Systems,*
                                                           *Inc. and the Putative Class*

**Of Counsel:**

Salvador P. Simao, Esq.

**On the Brief:**

Salvador P. Simao, Esq.
David Kim, Esq.
Priya Amin, Esq.

## TABLE OF CONTENTS

                                                  **Page**

ARGUMENT ................................................................................................................................ 1

I.     THE TAX INJUNCTION ACT DOES NOT BAR EAGLE'S COMPLAINT. ................. 1

        A.     The Supreme Court Has Unequivocally Rules on the Scope of the TIA…..……..1

        B.     Eagle's Complaint Does Not Seek to Enjoin the Three Discrete Phases of Taxation Encompassed by the TIA……………….…………………………….....2

        C.     The TIA Does Not Bar Challenges to an Agency's Unlawful Enforcement Position in Future Disputes…………………………………………………..…...4

CONCLUSION ............................................................................................................................. 7

## TABLE OF AUTHORITIES

**CASES**                                                                                                           **PAGE**

*Chamber of Commerce of the United States v. IRS*
　2017 U.S. Dist. LEXIS 166985 (W.D. Tex. Oct. 6, 2017) ................................................................... 4

*Direct Marketing Association v. Brohl*,
　135 S. Ct. 1124 (2015) ............................................................................................................... *passim*

*Hibbs v. Winn*,
　542 U.S. 88 (2004) ................................................................................................................................ 1

*Kemerer v. Hilliard*,
　2018 U.S. Dist. LEXIS 118495 (W.D. Pa. July 17, 2018) ..................................................................... 2

*Thorp v. D.C.*,
　317 F. Supp. 3d 74 (D.D.C. 2018) ........................................................................................................ 3


**FEDERAL STATUTES, REGULATIONS, AND AUTHORITIES**

28 U.S.C. § 1341.................................................................................................................................... 1

Plaintiff Eagle Systems, Inc. ("Eagle") submits this memorandum of law in accordance with the Court's July 31, 2019 Order to Show Cause, which directs the parties to address the impact of the Tax Injunction Act upon the Court's subject matter jurisdiction. For the reasons set forth herein, the Tax Injunction Act is inapplicable and does not bar Eagle's claims, and consequently this Court has jurisdiction over this matter.

## ARGUMENT

### I. THE TAX INJUNCTION ACT DOES NOT BAR EAGLE'S COMPLAINT.

The Tax Injunction Act ("TIA") provides that district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. However, "[n]owhere does the legislative history [of the TIA] announce a sweeping congressional direction to prevent federal-court interference with all aspects of state court administration." *Hibbs v. Winn*, 542 U.S. 88, 105 (2004). Rather, by its plain terms, the TIA only prohibits suits that seek to restrain the "*assessment, levy or collection*" of any State tax.

#### A. The Supreme Court Has Unequivocally Ruled on the Scope of the TIA.

The Supreme Court's recent decision in *Direct Marketing Association v. Brohl*, 135 S. Ct. 1124 (2015) provides the dispositive construction of the TIA's terms. The Court in *Brohl* explained that "in light of the Federal Tax Code at the time the TIA was enacted (as well as today), these three terms [assessment, levy and collection] refer to discrete phases of the taxation process." *Id.* at 1129.

Specifically, "assessment" refers to the "official recording of a taxpayer's liability, which occurs after information relevant to the calculation of liability is reported to the taxing authority." *Id.* at 1130 (emphasis added). What follows are the actions of levy and collection, which constitute

1

governmental actions "securing payment on a tax" and "the act of obtaining payment of taxes due." *Id.*  Consequently, *Brohl* instructed that "information gathering [is] a phase of tax administration procedure that occurs before assessment, levy, or collection." *Id.* at 1129.  In addition, The TIA only bars suits that "enjoin, suspend or restrain" these three specific activities.  Noting that the adoption of "a narrower definition is consistent with the rule that jurisdictional rules should be clear", the Supreme Court has stated that the question is whether the relief "to some degree *stops* assessment, levy or collection, not whether it merely *inhibits* them." *Id.* at 1133 (emphasis added).

In summary, the TIA only applies to those suits seeking to stop these three phases of the taxation process, it does not reach challenges to antecedent steps, even if such steps are taken to "improve" the government's "ability to assess and ultimately collect" a challenger's taxes. *Id.* at 1129, 1131.  As explained by the Supreme Court, "the TIA is not keyed to all activities that may improve a State's ability to assess and collect taxes.  Such a rule would be inconsistent not only with the text of the statue, but also with our rule favoring clear boundaries in the interpretation of jurisdictional issues." *Id.* at 1131.

### B.   Eagle's Complaint Does Not Seek to Enjoin the Three Discrete Phases of Taxation Encompassed by the TIA.

The *Brohl* decision makes perfectly clear that, even in the individual dispute context, certain steps taken by the State to facilitate its assessment of a taxpayer's liability are outside of the TIA's scope.  For example, in *Brohl*, the Court held that the TIA did not preclude a challenge to a tax reporting requirement.  In doing so, the Court noted that this activity was antecedent to assessment or collection, which are "discrete phases of the taxation process that do not include . . . private reports of information relevant to tax liability." *Id.* at 1129, 1131; *see also Kemerer v. Hilliard*, 2018 U.S. Dist. LEXIS 118495 (W.D. Pa. July 17, 2018) (noting that plaintiff challenged defendant's "alleged conduct during the auditing process" and that "to the extent plaintiff

2

challenged conduct that occurs <u>prior</u> to 'assessment', as that term is defined in *Direct Marketing* [*v. Brohl*], the TIA would not apply") (emphasis added); *Thorpe v. D.C.*, 317 F. Supp. 3d 74 (D.D.C. 2018) (holding that "information gathering", including using methods to "determin[e] the liability of a person or real property for a tax imposed" and "investigate tax liability and possible tax fraud" are actions of tax administration that are not a part of "assessment," "levy," or "collection" as defined by the Supreme Court in *Brohl*).

In this matter Eagle is seeking relief related to the Department's conduct prior to its powers of assessment, levy and collection. Specifically, Eagle's complaint seeks: (i) a declaration that the investigatory procedures conducted by the Department prior to assessment are unlawful; and (ii) declaratory and injunctive relief prohibiting the Department from engaging in such conduct in future audits against Eagle and the prospective Class Members.[1] As set forth in great detail in the Complaint, and in Eagle's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Docket Document # 26) (referred to hereinafter as "Eagle's Opposition"), the Department has, among other pre-assessment actions, unlawfully enforced the ABC test in a manner inconsistent with its statutory meaning (conduct which is also preempted by the FAAAA), improperly held that Eagle's compliance with federally mandated motor carrier regulations was evidence that Owner-Operators were employees rather than independent contractors, and inappropriately gathered information and investigated tax liability by merely adding IRS form 1099 payments as part of the audit, without any further analysis, all of which serve to violate Eagle's due process and constitutional rights.[2]

---

[1] Eagle acknowledges that the Complaint also seeks to declare void the specific assessments already issued by the Department against Eagle. For purposes of this brief, Eagle submits that the other claims for relief, as set forth above, are not barred by the TIA for the reasons stated herein.

[2] Rather than repeat the many improper pre-assessment actions taken by the Department, Eagle hereby incorporates by reference the substantive arguments made in Eagle's Opposition, which expands upon these actions in greater detail.

3

The relief sought by Eagle would not stop or enjoin the Department from exercising its powers to assess, levy or collect applicable taxes from employers. Rather, Eagle seeks a determination that the Department must, during the pre-assessment information gathering phase of taxation, conduct its enforcement in a manner that comports with the Supremacy Clause of the Constitution (particularly with respect to preemption), and does not violate the constitutional and due process rights of employers. For these reasons, the relief sought by Eagle's Complaint does not come within the purview of the TIA and this Court properly maintains subject matter jurisdiction.

### C. The TIA Does Not Bar Challenges to an Agency's Unlawful Enforcement Position in Future Disputes.

In the alternative, Eagle submits that should this Court determine that the Department's pre-assessment activity in connection with its already concluded audit of Eagle's operations is barred by the TIA, the Court must still hold that declaratory and injunctive relief related to the Department's future audits of Eagle or the Class Members is not barred by the TIA.

At best, the TIA's plain text, as interpreted by *Brohl*, applies only to suits seeking to enjoin States from taking steps, as part of the formal taxation process, to assess, levy or collect tax that is allegedly due or owing. The TIA does not bar the courthouse doors to challenges to generally applicable tax regulations or unlawful enforcement procedures, where no tax is allegedly due and the object of the suit is merely to clarify the legal rules that would govern taxation of potential future transactions.

The case of *Chamber of Commerce of the United States v. IRS*, 2017 U.S. Dist. LEXIS 166985 (W.D. Tex. October 6, 2017) is instructive. Although this case involved the Anti-Injunction Act, the court came to its conclusion using the rationale from the Supreme Court in *Brohl* regarding the scope of the TIA. In this case, the IRS had issued a Rule related to how it

would calculate ownership percentages for federal-tax purposes. *Chamber of Commerce*, 2017 U.S. Dist. LEXIS 166985, at * 3. The plaintiffs challenged the validity of the Rule and the IRS claimed that the Anti-Injunction Act barred plaintiff's claims in federal court. *Id.* The court held that the plaintiffs "do not seek to restrain assessment or collection of a tax against or from them or one of their members. Rather, Plaintiffs challenge the validity of the Rule so that a <u>reasoned decision can be made about whether to engage in a potential future transaction that would subject them to taxation under the rule</u>." *Id.* at *10 (emphasis added). The court cited the *Brohl* decision approvingly by noting that "[a]lthough the Rule may improve the government's ability to assess and collect taxes, <u>enforcement of the Rule does not involve assessment or collection of a tax</u>." *Id.* at *11 (emphasis).

      Similarly here, Eagle's Complaint alleges that the Department has taken numerous unlawful and inconstant enforcement positions in auditing motor carriers, and therefore requests this Court provide relief to ensure clarity for the tax paying public. For example, the Department has taken the enforcement position that the "B" prong of the ABC Test only involves an investigation into whether the services are an "essential part" of the motor carrier's business, despite the regulation requiring an additional inquiry into where the services of the independent contractors are performed.[3] Eagle's Complaint and Eagle's Opposition also details the numerous

---

[3] Eagle respectfully disagrees with the Court's statement that auditor George Matthew "concluded" that some owner-operators had met the "B" prong, or the ABC Test in general. (*See* Court's Memorandum Opinion, Docket Document # 43, p. 12). The Court points to the fact that the auditor's report notes that Matthew found that some contractors were "bona fide." However, the report does not indicate *why* Matthew found them to be bona fide, except to note that in some instances it was because "they had business income from other sources" and in some instances this determination was "*based on* interviews and supporting documents." In fact, other than these minimal descriptions, the report does not indicate how these "bona fide" contractors compared to others in the ABC Test analysis, and this cannot be determined without further discovery. What is clear is that the audit report does not indicate an analysis was done as to whether the contractor performed services "outside all the places of business" where the motor carrier operated, which is required by the B prong of the ABC Test.

instances in which an employer's compliance with federally mandated regulations was held to provide evidence of an employee-employer relationship under both the "A" and "C" prongs of the ABC Test. *See* Eagle's Opposition at p. 22-25. The Complaint also alleges additional actions by the Department, including but not limited to disregarding IRS determination letters and/or other relevant IRS documentation, counting non-taxable services as taxable wages, and seeking to invalidate its own regulations after an audit was completed. (Complaint ¶¶ 12, 79).

Consequently, the TIA in no way prohibits Eagle and the Class Members from seeking to gain clarity as to whether the Department is permitted to take these type of enforcement positions in future audits. A declaration as to the lawfulness of such actions will enable Eagle and the Class Members to make informed decisions on whether their compliance with federal regulations, or the Department's enforcement position with regard to the ABC Test, or other activities alleged above and in the Complaint, would subject them to taxation under the rule. If individualized information gathering to resolve a factual dispute is too attenuated from the "discrete phases of the taxation process" to fall within the TIA, as held in *Brohl*, then an agency's enforcement position establishing the legal rules to be applied in future tax disputes arising from future transactions is surely far beyond the TIA's reach.

## **CONCLUSION**

For the reasons stated herein and in its prior submissions, Plaintiff Eagle Systems, Inc., on behalf of itself and all others similarly situated, respectfully submits that the Tax Injunction Act does not bar this Court from exercising jurisdiction over the instant matter.

**FORDHARRISON LLP**

By: s/*Salvador P. Simao*
Salvador P. Simao
David S. Kim

*Attorneys for Plaintiff Eagle Systems, Inc. and the Putative Class*

Dated: August 8, 2019

WSACTIVELLP:10713974.1